**STATE of Delaware In the Interest of JAMES C.F., III, DOB 3/9/67, Respondent.**

Family Court of Delaware,
New Castle County.
Submitted: Oct. 30, 1984.
Decided: Dec. 4, 1984.

William Erhart, Deputy Atty. Gen., Wilmington, for the State.

J. Michael Johnson, Wilmington, for respondent.

JAMES, Judge.

This is the Court's decision on respondent's motions to dismiss and to suppress

following submissions by counsel of a Stipulation of Facts and letter memoranda.

Respondent, a juvenile, was charged with driving under the influence of alcohol and consumption of alcohol by a minor. Following a fact-finding hearing on both charges, the Master entered adjudications of delinquency on the driving under the influence charge and non-delinquency on the consumption charge.

Respondent perfected a Review de Novo hearing solely on the driving under the influence charge but, over respondent's objection, the State asserts that the Review de Novo hearing should encompass fact-finding on both charges heard by the Master despite the previous adjudication of non-delinquency on the consumption charge[1].

Respondent bases his motion to dismiss the consumption charge on Article I, § 8 of the Delaware Constitution, 11 *Del.C.* § 207, Family Court Rules 210, and 380, and the legal doctrines of res judicata and double jeopardy.

The Supreme Court of the United States enunciated the applicable principles in *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978):

"A State may not put a defendant in jeopardy twice for the same offense. *Benton v. Maryland,* 395 U.S. 784 [89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)]. The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal. The public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though 'the acquittal was based upon an egregiously erroneous foundation' ... If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair.

"Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's

'valued right to have his trial completed by a particular tribunal' ... Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." 434 U.S. at 503–05, 98 S.Ct. at 829–30 (footnotes omitted).

After reference to the above decision, the Supreme Court, in *Swisher v. Brady,* 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978), proceeded to approve an amended Maryland Juvenile Court Rule 911 governing the use of Masters in juvenile proceedings where a Master's decision constituted findings and recommendations, similar to the applicable statute and Family Court Rule in Delaware, only because double jeopardy attaches at the Master's hearing and "... the State no longer has the power to secure a *de novo* hearing before the Juvenile Court judge after unfavorable proposals by the master". 438 U.S. at 210, 98 S.Ct. at 2703.

■ The State argues that when a matter comes before a Judge *de novo* in Delaware, the Master's fact-finding hearing is treated as an absolute nullity and, therefore, the State should be entitled to another attempt to prove respondent delinquent on the consumption charge. Such a contention was specifically rejected in *Swisher, supra,* where the Supreme Court stated:

"Importantly, a Rule 911 proceeding does not impinge on the purposes of the Double Jeopardy Clause. A central purpose 'of the prohibition against successive trials' is to bar 'the prosecution [from] another opportunity to supply evidence which it failed to muster in the first proceeding.' *Burks v. United States,* 437 U.S. 1, 11 [98 S.Ct. 2141, 2147, 57 L.Ed.2d 1] (1978). A Rule 911 proceeding does not provide the prosecution that forbidden 'second crack.' The record is then closed, and additional evidence can be received by the Juvenile Court judge *only with the consent of the*

---

1. Obviously, this unusual situation would not have occurred except for the joinder of these separate offenses for fact-finding at the Master level.

*minor."* 438 U.S. at 215–16, 98 S.Ct. at 2706. (emphasis supplied)

For the above reasons, respondent's motion to dismiss the consumption charge is granted.

Turning to respondent's motion filed with respect to the driving under the influence charge, he seeks the suppression of certain evidence including the arresting officer's visual observations, respondent's responses to questioning by the officer, and evidence of respondent's blood alcohol content obtained at or after the time of the initial detention of the respondent. The basis for this motion is an unreasonable search and seizure without probable cause to believe that respondent was driving under the influence of alcohol, unlawful detention prior to arrest, and the lack of the warnings enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Berkemer v. McCarty,* —— U.S. ——, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

■ The Court finds after reviewing the factual stipulation that the arresting officer had the required probable cause to stop the respondent because his driving demonstrated poor judgment under the prevailing adverse weather conditions, including tailgating, overtaking and passing other vehicles without the use of his turn signal, sliding his vehicle from side to side, and traveling just under the 50 mile per hour speed limit while other traffic drove at approximately 35 miles per hour. Based upon respondent's flushed face, bloodshot and glassy eyes, and odor of alcohol, the officer properly administered a preliminary chemical blood test because road side coordination tests were not possible due to the weather conditions at the scene of the stop. The results of this preliminary chemical test indicated just below .10% blood alcohol which may be used as one factor in determining the probable cause to believe that a violation of 21 *Del.C.* § 4177(a) had occurred. Of course, this preliminary screening test result may not be substituted for the chemical test result upon which a finding of guilt shall be made under 21 *Del.C.* § 4177(b).

■ Although recently the Supreme Court held that the warnings of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), apply to misdemeanor traffic arrests, *Berkemer v. McCarty,* —— U.S. ——, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), both cases are applicable only to verbal statements. Since the physical coordination tests performed by respondent, the results of the preliminary chemical blood test, and the Intoxilizer chemical test of .10% are non-testimonial in nature, such evidence should not be suppressed. As to the oral statements respondent made to the arresting officer at the scene of the stop during general questioning, they do not amount to custodial interrogation suppressible under *Miranda* and *Berkemer.*

Based upon the above, respondent's motion to suppress evidence obtained by the arresting officer after the stop of respondent's motor vehicle is hereby denied.

IT IS SO ORDERED.